### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

CHRISTOPHER JOHN ADAMS,      :
    Plaintiff,               :
                       :
    v.                     :      **CIVIL ACTION NO. 25-CV-7291**
                       :
COURT OF COMMON PLEAS     :
OF PHILADELPHIA COUNTY, *et al.*,  :
    Defendant.           :

### <u>MEMORANDUM</u>

**COSTELLO, J.**                                       **JUNE 10, 2026**

Plaintiff Christopher John Adams, an unrepresented litigant, commenced this action by filing a complaint asserting violations of his constitutional rights and the Americans with Disabilities Act 42 U.S.C. § 12132, *et seq*. ("ADA") arising from state court mortgage foreclosure proceedings.  Currently before the Court are Adams's Motion for Leave to Proceed *In Forma Pauperis* (ECF No. 1) and his Complaint ("Compl." (ECF No. 2)), in which he asserts claims against the Court of Common Pleas of Philadelphia County, the Administrative Judge of that court's Trial Division, and the Clerk of that court.[1]  For the following reasons, the Court will grant Adams leave to proceed *in forma pauperis* and dismiss his Complaint with prejudice for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

---

[1] Included in Adams's Complaint is an Emergency Motion for Temporary Restraining Order (*see* Compl. at 11-15), which will be docketed separately.  In his Emergency Motion, Adams includes as Defendants the Administrative Judge of the Trial Division of the Philadelphia Court of Common Pleas, and the Clerk of that court. (Compl. at 11.)  The Court understands Adams to assert claims against the Administrative Judge and the Clerk in his Complaint, in addition to identifying them in his Emergency Motion.  In light of the Court's disposition of Adams's claim, the motion will be denied as moot.

I.      **FACTUAL ALLEGATIONS**[2]

The gravamen of Adams's claim is that in the course of state court foreclosure proceedings involving an LLC of which he is the sole member, he was not permitted to represent the LLC in court proceedings because he is not an attorney. (*See* Compl.)  Adams alleges that he is an individual with documented cognitive and neurological impairments that substantially limit his participation in major life activities, including executive functioning, stress tolerance, and information processing. (*Id*. at 7.)  He is also the sole managing member and owner of multiple limited liability companies. (*Id*.)  In his capacity as sole owner of Young Money, LLC ("Young Money"), the owner of property located at 2331 Gerritt Street in Philadelphia ("the Property") that is the subject of pending state court foreclosure proceeding, on December 22, 2025, he sought to appear on the entity's behalf to assert equitable defenses and request relief. (*Id*. at 3, 7- 8.)  The clerks at the Philadelphia Court of Common Pleas would not file his *pro se* motions and explained to him that Young Money must appear through licensed counsel, providing him with a copy of "Opinion 96-105" explaining this requirement.[3] (*Id*. at 3, 8.)  Adams alleges that his

---

[2] Unless otherwise stated, the factual allegations set forth in this Memorandum are taken from Adams's Complaint, consisting of the Court's form for a non-prisoner filing a civil action, supplemented with a six-page typewritten complaint, and the incorporated Emergency Motion. (ECF No. 2.)  The Court deems the entire submission to constitute the Complaint and adopts the pagination supplied by the CM/ECF docketing system.  Where appropriate, grammar, spelling, and punctuation errors in Adams's pleadings will be corrected for clarity.

[3] Attached to the Complaint is a page from "Opinion 96-105" pertaining to representation of corporations by non-attorney corporate officers in the courts of the Commonwealth of Pennsylvania, as well as a page identifying sources of legal assistance, email exchanges reflecting efforts to resolve mortgage foreclosure proceedings on the Property, an appraisal of the Property, a summary of planned renovations to the Property, documents pertaining to an insurance claim related to the Property, a completed Standard Agreement for the sale of Real Estate reflecting the purchase of the Property by Young Money, and pleadings in *Reigo by Meitav Dash US Investments LLC v. Young Money Trading LLC*, No. 2083, December Term 2025 (C.P. Phila.). (*See* Compl. at 16-155.)

disability limits his ability to secure and communicate effectively with counsel and, additionally, that he cannot afford an attorney. (*Id*. at 3, 8.)  He claims that the refusal to permit him to represent the LLC caused him to lose the Property. (*Id*. at 3.)

Adams asserts that less restrictive means of protecting an LLC's interests exist than the complete prohibition on permitting an individual member of an LLC who is not an attorney to represent the LLC. (*Id*. at 8.)  He further claims that the Defendants have refused to consider these alternatives. (*Id*.)  He asserts claims based on violations of his First and Fourteenth Amendment rights, and the ADA. (*Id*. at 9.)  He seeks appointment of counsel, declaratory relief, injunctive relief, and money damages. (*Id*. at 4, 10.)

## II.    STANDARD OF REVIEW

The Court will grant Adams leave to proceed *in forma pauperis* because it appears that he is incapable of paying the fees to commence this civil action.  Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the Complaint if it fails to state a claim.  Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 560 U.S. 544, 556 (2007)).  At this early stage of the litigation, the Court will accept the facts alleged in the *pro se* complaint as true, draw all reasonable inferences in the plaintiff's favor, and ask only whether the complaint contains facts sufficient to state a plausible claim. *See Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021), *abrogation on other grounds*

3

*recognized by Fisher v. Hollingsworth*, 115 F.4th 197, 204 (3d Cir. 2024). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678.

Because Adams is proceeding *pro se*, the Court construes his allegations liberally. *See Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)). The Court will "apply the relevant legal principle even when the complaint has failed to name it." *Id.* However, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Id.* (quoting *Mala*, 704 F.3d at 245). An unrepresented litigant "cannot flout procedural rules — they must abide by the same rules that apply to all other litigants." *Mala*, 704 F.3d at 245; *see also Doe v. Allegheny Cnty. Hous. Auth.*, No. 23-1105, 2024 WL 379959, at *3 (3d Cir. Feb. 1, 2024) (*per curiam*) ("While a court must liberally construe the allegations and 'apply the applicable law, irrespective of whether the pro se litigant mentioned it be name,' *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002), this does not require the court to act as an advocate to identify any possible claim that the facts alleged could potentially support.").

## III.    DISCUSSION

### A.    Claims Based on Loss of the Property

Adams alleges that he was "coerced to hire an attorney he [could not] afford resulting in loss of property." (Compl. at 3.) The Court understands Adams to be asserting a claim for loss of the value of the Property. However, documents attached to the Complaint make clear that the Property subject to foreclosure is owned by Young Money, and if the Property was lost to foreclosure, the loss belongs to Young Money, not Adams as its sole member. Because Adams cannot allege that he personally sustained any loss associated with the loss of the Property, this claim will be dismissed with prejudice.

4

Moreover, to the extent Adams seeks recovery of damages related to the loss of the Property on behalf of Young Money, he may not do so because he is not an attorney and so may not represent Young Money in federal Court. Under 28 U.S.C. § 1654, parties "may plead and conduct their own cases personally or by counsel" in the federal courts. Section 1654 thus ensures that a person may conduct his or her own case *pro se* or retain counsel to do so. *See Osei-Afriyie v. Med. Coll. of Pa.*, 937 F.2d 876, 882 (3d Cir. 1991) ("The statutory right to proceed *pro se* reflects a respect for the choice of an individual citizen to plead his or her own cause." (quoting *Cheung v. Youth Orchestra Found. of Buffalo, Inc.*, 906 F.2d 59, 61 (2d Cir. 1990))). Although an individual may represent himself *pro se*, a non-attorney may not represent other parties in federal court. *Murray ex rel. Purnell v. City of Philadelphia*, 901 F.3d 169, 170 (3d Cir. 2018); *see also Collinsgru v. Palmyra Bd. of Educ.*, 161 F.3d 225, 232 (3d Cir. 1998) ("The rule that a non-lawyer may not represent another person in court is a venerable common law rule."), *abrogated on other grounds by Winkelman ex rel. Winkelman v. Parma City Sch. Dist.*, 550 U.S. 516 (2007). This principle has been applied by the Supreme Court, the United States Court of Appeals for the Third Circuit, and other courts in various contexts. *See, e.g., Rowland v. Cal. Men's Colony*, 506 U.S. 194, 202 (1993) (recognizing that corporations must be represented by counsel and that "save in a few aberrant cases, the lower courts have uniformly held that 28 U.S.C. § 1654 . . . does not allow corporations, partnerships or associations to appear in federal court otherwise through a licensed attorney" (footnote omitted) ); *Simon v. Hartford Life, Inc.*, 546 F.3d 661, 667 (9th Cir. 2008) (holding that a non-lawyer could not litigate *pro se* on behalf of an ERISA plan); *Osei-Afriyie*, 937 F.2d at 882 ("We hold that Osei-Afriyie, a non-lawyer appearing *pro se*, was not entitled to play the role of attorney for his children in federal court."); *Phillips v. Tobin*, 548 F.2d 408, 411-12 (2d Cir. 1976) (holding that a non-attorney

could not appear *pro se* to conduct a shareholder's derivative suit*). See also 702 E. 20th Street, LLC v. Wilmington Sav. Fund Soc., FSB*, No. 20-4114, 2020 WL 5095942, at \*2 (E D. Pa. Aug. 28, 2020) (holding that individual member of LLC "may not represent 702 E. 20th Street, LLC since he does not appear to be an attorney.")

## B.    Constitutional Claims

Adams asserts claims based on alleged violations of his First and Fourteenth Amendment rights. (Compl. at 2.)  The vehicle by which federal constitutional claims may be brought in federal court is 42 U.S.C. § 1983.  "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).  For the following reasons, these claims are not plausible and will be dismissed.

### 1.    Immunity

Adams's § 1983 claims for money damages cannot proceed against the Philadelphia Court of Common Pleas or clerks of that court because these parties are immune.  The Eleventh Amendment bars suits against a state and its agencies in federal court that seek monetary damages.  *See Pennhurst State Sch. And Hosp. v. Halderman*, 465 U.S. 89, 99-100 (1984); *A.W. v. Jersey City Public Schs.*, 341 F.3d 234, 238 (3d Cir. 2003).  The Philadelphia Court of Common Pleas, as part of Pennsylvania's unified judicial system, shares in the Commonwealth's Eleventh Amendment immunity.  *See Benn v. First Judicial Dist. of Pa.*, 426 F.3d 233, 241 (3d Cir. 2005).  Suits against state officials acting in their official capacities are really suits against the employing government agency, and as such, are also barred by the Eleventh Amendment. *A.W.*, 341 F.3d at 238; *see also Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Will v. Mich. Dep't of*

6

*State Police*, 491 U.S. 58, 70-71 (1989).  Additionally, the United States Court of Appeals for the Third Circuit has held that, where a claim is filed against state officials who were not directly involved in the activities that caused the alleged constitutional violation, but are instead named as defendants because of their positions in state government, they are deemed to be sued in their official capacities and thus entitled to Eleventh Amendment immunity.  *Downey v. Pa. Dep't of Corr.*, 968 F.3d 299, 310 (3d Cir. 2020).  As the Commonwealth has not waived its Eleventh Amendment immunity for lawsuits filed in federal court, *see* 42 Pa. Cons. Stat. § 8521-22, it and its departments, as well as their officials sued in their official capacities, are immune from suits filed in federal court.

Additionally, courts have held that clerks of court and clerk's office employees enjoy absolute immunity and quasi-judicial immunity when performing duties required by statute or at the direction of judicial authority.  *See e.g.*, *Lucarelli v. Norton*, No. 06-53, 2006 WL 709319, at *7 (M.D. Pa. Mar. 17, 2006); *Pokrandt v. Shields*, 773 F. Supp. 758, 765 (E.D. Pa. 1991) (noting that courts have held that clerks of court are entitled to immunity the same as judges); *DeFerro v. Coco*, 719 F. Supp. 379, 381 (E.D. Pa. 1989) (holding that absolute immunity extends to court clerk because he was a "nonjudicial officials whose activities are integrally related to the judicial process and involve the exercise of discretion comparable to that of a judge"); *Mercedes v. Barrett*, 453 F.2d 391, 392 (3d Cir. 1971); *Lockhart v. Hoenstine*, 411 F.2d 455, 460 (3d Cir. 1969) ("In addition to the recognized immunity enjoyed by judicial and quasijudicial officers, including prothonotaries, there exists an equally well-grounded principle that any public official acting pursuant to court directive is also immune from suit.")

Adams's claims against the state court officials are based on their enforcing the well settled Pennsylvania requirement that artificial entities must be represented by counsel.  *See*

*Barrett v. M&B Med. Billing, Inc.*, 291 A.3d 371, 377-78 (Pa. Super. Ct. 2022) ("we conclude that the trial court erred in allowing [plaintiff] to represent [the entity]. Although [she] has the right to proceed pro se with respect to the claims against her in her individual capacity, she could not represent [the entity] at trial because she is not an attorney" (collecting cases); *Walacavage v. Excell 2000, Inc.*, 480 A.2d 281, 284 (Pa. Super. Ct. 1984) ("The reasoning behind the rule is that 'a corporation can do no act except through its agents and that such agents representing the corporation in Court must be attorneys at law who have been admitted to practice, are officers of the court and subject to its control.' . . . This rule holds even if the corporation has only one shareholder.") (citations omitted); *Selig v. Zoning Hearing Bd. of N. Whitehall Twp.*, No. 180 C.D. 2014, 2014 WL 3586255, at *1 (Pa. Commw. Ct. July 22, 2014) (affirming trial court holding that the "fact that [plaintiff] is the sole owner of Aerotierra, LLC does not circumvent the rule that a corporation cannot proceed pro se or with a non-attorney representing them (sic))" (citing *Walacavage*, 480 A.2d at 284); *see also* 42 Pa. Stat and Cons. Stat. Ann. § 2524 (stating that any person who practices law without being an attorney at law commits a misdemeanor of the third degree). They are, accordingly, entitled to quasi-judicial immunity and the money damages claims against them will be dismissed.

### 2.    Personal Involvement

Although the Court understands Adams to be asserting constitutional claims against the Administrative Judge of the Trial Division of the Philadelphia Court of Common Pleas, there are no allegations in the Complaint or the Emergency Motion describing any conduct engaged in by the Administrative Judge that violated Adams's constitutional rights. "A defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988); *see also Jutrowski v. Township of Riverdale*,

904 F.3d 280, 290 (3d Cir. 2018) ("Each Government official, his or her title notwithstanding, is only liable for his or her *own* misconduct.") (quoting *Iqbal*, 556 U.S. at 677) (emphasis in original); *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) ("Personal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence.'" (quoting *Rode*, 845 F.2d at 1207)). *See Iqbal*, 556 U.S. at 676 (explaining that "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution"). "Although a court can infer that a defendant had contemporaneous knowledge of wrongful conduct from the circumstances surrounding a case, the knowledge must be actual, not constructive." *Chavarriaga v. New Jersey Dept. of Corr.*, 806 F.3d 210, 222 (3d Cir. 2015) (citing *Baker v. Monroe Township*, 50 F.3d 1186, 1194 (3d Cir. 1995); *Rode*, 845 F.2d at 1201 n.6). Because Adams has not alleged that the Administrative Judge was personally involved in the conduct giving rise to his claims the claims are not plausible and will be dismissed. For the reasons that follow, Adams will not be granted leave to amend these claims.

### 3.    First Amendment Claims

Adams claims that the prohibition on his representation of Young Money in foreclosure proceedings constitutes "a prior restraint on petition by requiring the purchase of counsel as a condition precedent." (Compl. at 9.) Moreover, he maintains that his right to access the courts was violated by the Defendants' conduct. (*Id*.) However, the allegations in the Complaint reflect that Adams was not denied access to the court. Instead, he was prohibited from representing Young Money in the pending foreclosure proceedings because he is not an attorney. Moreover, Young Money, not Adams, was required to retain counsel in the proceedings. To the extent the Defendants' conduct interfered with Young Money's access to the court or constituted

a prior restraint on its ability to defend itself, Adams may not pursue these claims on Young Money's behalf for the same reason he may not pursue a damages claim on its behalf – he is not an attorney. *See supra*, Section III. A. Because Adams has not plausibly alleged that his own First Amendment rights have been violated by any conduct of the Defendants, his claim for non-monetary relief will be dismissed. The dismissal will be with prejudice because amendment will not cure this deficiency.

### 4.      Fourteenth Amendment Claims

#### a.      Due Process

Adams claims that the Defendants' refusal to permit him to represent Young Money in court proceedings because he is not an attorney violated his right to due process. The Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. Three kinds of § 1983 claims may be brought under the Due Process Clause of the Fourteenth Amendment. *Zinermon v. Burch,* 494 U.S. 113, 125 (1990). First, a plaintiff may bring suit under § 1983 for a violation of his specific rights as guaranteed by the Bill of Rights. *Id.* Second, a plaintiff may assert a Fourteenth Amendment claim under the "procedural" aspect of the Due Process Clause, which guarantees fair procedure for the deprivation of a constitutionally protected interest in life, liberty, or property. *Id.* Third, a plaintiff may assert a claim under the "substantive" prong of the Due Process Clause, which bars certain arbitrary, wrongful government actions regardless of the fairness of the procedures used to implement them. *Id.* (quoting *Daniels v. Williams,* 474 U.S. 327, 331 (1986)).

Any due process claim seeking non-monetary relief is not plausible because Adams has no liberty or property interest in practicing law without a license. As noted, under Pennsylvania

law, Adams's representation of Young Money in the pending foreclosure proceedings would be a misdemeanor. *See* 42 Pa. Stat and Cons. Stat. Ann. § 2524. The requirement that artificial entities appear through counsel in litigation is not arbitrary. It has long been recognized in both federal and Pennsylvania law. Adams's due process claim is not plausible and will be dismissed. The dismissal will be with prejudice because amendment cannot cure the deficiency described.

### b.    Equal Protection

Adams also claims that the Defendants' refusal to permit him to represent Young Money because he is not an attorney violated his right to equal protection. "The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (quoting *Plyler v. Doe*, 457 U.S. 202, 216 (1982)). To state a plausible equal protection violation, a plaintiff must show that he received different treatment than other similarly situated individuals and that the disparate treatment was based on his or her protected class status. *Leibert v. Phila. Hous. Auth.*, 474 F. App'x 76, 79 (3d Cir.2012) (citing *Shuman ex rel. Shertzer v. Penn Manor Sch. Dist.*, 422 F.3d 141, 151 (3d Cir.2005)). "Persons are 'similarly situated' for purposes of an equal protection claim when 'they are alike in all relevant aspects.'" *Startzell v. City of Philadelphia*, 533 F.3d 183, 203 (3d Cir. 2008) (emphasis omitted). As alleged, Adams's claim is not plausible. He alleges that he was not permitted to represent Young Money because he is not an attorney, not because of his membership in any protected class. Moreover, he does not allege that other non-attorneys were permitted to represent their solely owned LLCs while he was not. Accordingly, this claim for non-monetary relief will be

11

dismissed.  The dismissal will be with prejudice because amendment would not cure this deficiency.

### C.    ADA Claim

Adams claims that the Philadelphia Court of Common Pleas did not provide him with reasonable accommodation for his disabilities, in violation of the ADA.   (Compl. at 8-9.)  Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.  Title II provides a cause of action for disabled individuals claiming that they were denied access to state courts because of their disabilities.  *See Tennessee v. Lane*, 541 U.S. 509, 533-34 (2004) (recognizing that Title II of the ADA validly abrogates state sovereign immunity "as it applies to the class of cases implicating the fundamental right of access to the courts").

To state a plausible claim under Title II of the ADA, a plaintiff must allege that "(1) he is a qualified individual; (2) with a disability; (3) who was excluded from participation in or denied the benefits of the services, programs, or activities of a public entity, or was subjected to discrimination by any such entity; (4) by reason of his disability."  *Montanez v. Price*, 154 F.4th 127, 146 (3d Cir. 2025) (citing *Haberle v. Troxell*, 885 F.3d 170, 178-79 (3d Cir. 2018)).  To plausibly allege that he is a "qualified individual with a disability" under Title II, Adams must allege that he has a "disability" which is defined as "a physical or mental impairment that substantially limits one or more major life activities of such individual. . . ."  42 U.S.C. § 12102(1)(A).  "[M]ajor life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working."

12

*Id*. at § 12102(2)(A).  With the passage of the Americans with Disabilities Act Amendments Act ("ADAAA") in 2008, "Congress mandated that the definition of disability shall be construed in favor of broad coverage of individuals to the maximum extent permitted."  *Morgan v. Allison Crane & Rigging LLC*, 114 F.4th 214, 221 (3d Cir. 2024) (cleaned up).  Additionally, the ADAAA requires a "less searching analysis" of whether a plaintiff is "substantially limited."  *Kravits v. Shinseki*, No. 10–861, 2012 WL 604169, at *7 (W.D. Pa. Feb. 24, 2012).

Title II of the ADA includes within its prohibition against discrimination the failure to make "reasonable accommodations."  *See Haberle*, 885 F.3d at 180.  When determining whether an accommodation is reasonable, courts consider "whether it alters the essential nature of the program or imposes an undue burden or hardship in light of the overall program."  *Doe 1 v. Perkiomen Valley Sch. Dist*., 585 F. Supp. 3d 668, 694-95 (E.D. Pa. 2022) (quoting *Helen L. v. DiDario*, 46 F.3d 325, 337 (3d Cir. 1995)).  "A public entity need not make 'fundamental' or 'substantial' alterations to accommodate a disabled individual."  *Id*. at 695 (citing *Alexander v. Choate*, 469 U.S. 287, 300 (1985)).

Because Adams seeks compensatory damages for his ADA claim, he must also plead that he suffered intentional discrimination under a deliberate indifference standard.  *See Haberle*, 885 F.3d at 181 (citations omitted).  A plaintiff may meet that standard in two ways: "first, by alleging facts suggesting that the existing policies caused a failure to adequately respond to a pattern of past occurrences of injuries like the plaintiff's, or, second, by alleging facts indicating that he could prove that the risk of cognizable harm was so great and so obvious that the risk and the failure to respond will alone support finding deliberate indifference."  *Id.* (cleaned up).

Adams asserts failure to accommodate claims under Title II of the ADA.  He alleges that he suffers from documented cognitive and neurological impairments that substantially limit his

participation in major life activities, including executive functioning, stress tolerance, and information processing. (Compl. at 7.) His disabilities limit his ability to secure and communicate effectively with counsel. (*Id*. at 3, 8.) He claims that the Defendants have failed to accommodate his disabilities by, among other things, altering their prohibition on non-attorneys representing artificial entities. (*Id*.) Even accepting these allegations as true, Adams's ADA claim is not plausible because he does not allege that he was denied access to the court *because he is disabled*, but rather because he is not an attorney. (*See* Compl. at 3, *id*. at 7-8.) ("Plaintiff was categorically barred from proceeding because the LLC could not appear pro se").) Moreover, since providing Adams with the accommodation he sought – representing the LLC *pro se* – would violate Pennsylvania law, any such accommodation would require that the Defendants make fundamental alterations to state law. Accordingly, he cannot satisfy the elements of an ADA discrimination or failure to accommodate claim. Because the claims are not plausible and amendment would not cure this deficiency, Adams's ADA claims are dismissed with prejudice.

## IV.   CONCLUSION

For the foregoing reasons, the Court will grant Adams leave to proceed *in forma pauperis* and dismiss his Complaint with prejudice. Adams will not be granted leave to amend the Complaint because to do so would be futile.

An appropriate Order accompanies this Memorandum.

BY THE COURT:

_____

**MARY KAY COSTELLO, J.**

14